BRUNEY ET AL. *v.* LITTLE ET AL.

[Cite as Bruney v. Little, 8 Ohio Misc. 393.]

(No. 22781—Decided June 15, 1966.)

Common Pleas Court of Belmont County.

Matz, J. The petition in this case alleges that on the 28th day of February 1965, plaintiff was "admitted as a patient at defendant Martins Ferry Hospital in the services of defendants J. H. Carson and A. S. Daniel, both duly qualified and licensed physicians for the treatment of breast conditions"; that on or about the first day of March 1965, plaintiff underwent certain surgical procedures in the Martins Ferry Hospital and that by reason of the negligence of said named physicians and of Dr. Harold G. Little, who was a pathologist employed by the hospital, the plaintiff suffered certain personal damage and injury for which judgment is prayed for in the sum of $150,000.00.

Personal service under the regular process statute of Ohio was obtained on the defendant Martins Ferry Hospital Association and defendant J. H. Carson. The defendants Harold G. Little and A. S. Daniel were non-residents of Ohio and service was attempted to be had under the provisions of the "long-arm" statute of Ohio. (Sections 2307.381 to 2307.385, Revised Code.)

A motion was filed by the defendant Dr. A. S. Daniel to quash the service of summons on him for the following reasons:

(1) That service of summons was not made upon the defendant in accordance with the provisions of Section 2307.383, Revised Code.

(2) "That such service and the statutes of Ohio authorizing the same insofar as attempted to be applied herein are in contravention of Article I, Section 16 and Article II, Section 28 of the Constitution of Ohio and Section 1 of Amendment XIV of the Constitution of the United States."

(3) That the cause of action alleged in the petition accrued prior to the effective date of Section 2307.381 et seq., Revised Code.

The defendant Dr. Harold G. Little filed a motion to quash the service of summons on him for the reason that the cause of action stated in the petition against him is "shown by the petition to have arisen prior to the 28th day of September 1965," the effective date of Section 2307.383, Revised Code, and that said "statute or statutes as they apply to him are contrary to the Fourteenth Amendment (of the Constitution) of the United States and Article I, Section 16, and Article II, Section 28, of the Constitution of the State of Ohio."

We will consider the motion of Dr. Daniel first, considering his claim that the service of summons upon him was not made in accordance with the provisions of Section 2307.383, Revised Code. Section 2307.381, Revised Code, is the definitive section. Section 2307.382, Revised Code, provides in part,

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state;

"(2) * * *

"(3) Causing tortious injury by an act or omission in this state;

"(4) * * *

"(5) * * *

"(6) * * *

"(7) * * *

"(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

The next section, Section 2307.383, Revised Code, provides as follows:

"When personal jurisdiction is authorized by Section 2307.382 of the Revised Code service of process may be made on such person, or any agent of such person, in any county in this state where he may be found or on the secretary of state who, for this purpose, shall be deemed to be the statutory agent of such person."

"Such process shall be served, by the officer to whom the same is directed, or by the sheriff of Franklin County, who may be deputized for such purposes by the officer to whom the service is directed, upon the secretary of state by leaving at the

office of the secretary of state, at least fifteen days before the return day of such process, a true and attested copy thereof, and by sending to the defendant, by registered mail, postage prepaid, a like true and attested copy, with an indorsement thereon of the service upon said secretary of state, addressed to such defendant at his last known address. The registered mail return receipt of such defendant shall be attached to and made a part of the return of service of such process.''

Section 2307.384, Revised Code, reads as follows:

''When the exercise of personal jurisdiction is authorized by Sections 2307.381 to 2307.385, inclusive, of the Revised Code, any action of suit may be brought in the county wherein the plaintiff resides or where the cause of action or any part thereof arose.''

The last section of the ''long-arm statute,'' Section 2307.-385, Revised Code, provides:

''A court of this state may exercise jurisdiction on any other basis authorized in the Revised Code, notwithstanding Sections 2307.381 to 2307.385, inclusive, of the Revised Code.''

The summons was issued to the Sheriff of Belmont County who deputized the Sheriff of Franklin County ''for the purpose of serving the within writ upon the secretary of state of the state of Ohio, agent for the service of process on the within named defendants.'' Attached to the summons is the return of the Sheriff of Franklin County in which he recites his authorization by the Sheriff of Belmont County, service of same upon the secretary of state, and further recites,

''I also on the 2nd day of March, 1966, served the within named defendant, Harold G. Little, M. D., 5 Stramm Lane, Wheeling, West Virginia; and A. S. Daniel, M. D., 30 Mt. Lebanon Drive, Bethlehem, West Virginia, by sending each of them at their last known address * * * a true and attested copy thereof with an endorsement thereon of the service on the Secretary of State of the State of Ohio,''
and further recites,

''The registered mail return receipt of said defendant, Harold G. Little, is attached hereto and made a part hereof. The registered letter sent to said A. S. Daniel, M. D., returned no such Post Office or city in State, is attached hereto, and made a part hereof.''

And attached thereto is the envelope containing summons as to defendant Daniel which has stamped thereon a notation, "No such Post Office in State."

The original summons has endorsed thereon a return by the Sheriff of Belmont County which reads in part as follows:

"Received this writ February 23, 1966, at 3:00 o'clock P. M., and on February 25, 1966, I served the within named Harold G. Little, M. D., and A. S. Daniel, M. D., by sending to each of them at their last known address by registered mail * * * with an endorsement thereon of the service upon the secretary of state of the State of Ohio."

By the affidavit of the Post Master of Wheeling, West Virginia, it is definitely established that there is no post office at Bethlehem, West Virginia.

The copy of the summons mailed by the Sheriff of Belmont County was, in fact, delivered to defendant Daniel in due time. A copy of the summons which the defendant received is attached to the affidavit of Frank A. O'Brien, Jr., one of counsel representing defendant Daniel which was certified by the Sheriff of Belmont County as a true copy. It does not, however, contain an endorsement that a copy of the original summons was served on the Secretary of State. In fact, the Belmont County Sheriff's return shows that a copy of the summons was sent by mail on February 24, 1966, which is corroborated by the Post Master's stamp on the envelope, at which time, according to the return of the Sheriff of Franklin County, summons had not yet been served on the secretary of state. It would therefore appear that the service of summons on the defendant Dr. Daniel was not in accordance with the provisions of Section 2307.383, Revised Code. It will be observed that the statute first requires a service of summons upon the secretary of state who is deemed the statutory agent which, in fact, means nothing insofar as notice to the defendant is concerned because the secretary of state is not required to do anything with the summons.

To complete the service of summons and, in the opinion of the court, the important and indispensable step, the person making service upon the secretary of state must mail a copy thereof with the service upon the secretary of state, endorsed thereon, to the defendant at his last known address. Mailing of a

summons directed to a non-existent post office would not comply with the statute. A copy of the summons sent by the Sheriff of Belmont County is likewise ineffective because of the absence of a specific requirement of the statute of an endorsement of service upon the secretary of state. For this reason alone, the motion of the defendant Dr. A. S. Daniel should be sustained.

Both non-resident defendants claim the Ohio "long-arm" statute is contrary to the Fourteenth Amendment of the United States Constitution and Article I, Section 16, and Article II, Section 28 of the Constitution of the State of Ohio.

In 1877, the Supreme Court of the United States decided the case of *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565. The second branch of the syllabus reads as follows:

"A personal judgment rendered in a State Court, in an action upon a money demand against a non-resident of the State, without personal service of process upon him within the State or his appearance in the action upon service by publication is without any validity; and no title to property passes by a sale under an execution issued upon such a judgment."

The doctrine laid down by *Pennoyer* v. *Neff* as set forth in the second branch of the syllabus was universally followed and considered without question for over fifty years. In Ohio, the lawyers, courts, and the Legislature have assumed and regarded that personal jurisdiction over a non-resident could not be obtained by an Ohio court without personal service within the state. Substituted service over a non-resident defendant, however, was recognized where a court has jurisdiction over specific real or personal property. Jurisdiction in such instances, however, was limited solely and only to the power of the court to adjudicate with respect to the rights of non-resident defendants in the property which was the subject of the litigation. In fact, until the so-called "long-arm" statutes were enacted by the various Legislatures within the last 20 years, it was regarded as settled that the doctrine laid down in *Pennoyer* v. *Neff* controlled personal service upon a non-resident defendant.

In Ohio, the first in-road upon *Pennoyer* v. *Neff* was Section 2703.20, Revised Code, which was originally enacted in

1933. (115 Ohio Laws 36.) This section provided that any non-resident being the operator or owner of a motor vehicle, by the operation of such motor vehicle within the state of Ohio, is considered to make and constitute the Secretary of State of Ohio as his agent for the service of process in a civil action instituted in a court of the state of Ohio against such operator or owner arising out of an automobile accident or collision within the state. At the time of the passage of that statute, it was still universally recognized that in order to get personal service on a non-resident defendant, he must be served with process within the state. The statute set up a fiction that a non-resident, by operating an automobile in the state of Ohio, thereby constituted and appointed the secretary of state as his agent for the service of process of summons and which would comply with the interpretation of the due process of law clause in *Pennoyer* v. *Neff*.

Since the enactment of Section 2703.20, Revised Code, the Supreme Court of the United States has modified the doctrine announced in *Pennoyer* v. *Neff*.

In the case of *International Shoe Co.* v. *State of Washington*, 326 U. S. 310, 90 L. Ed. 95, the court, in the opinion, page 101, says:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff*, 95 U. S. 714, 733, 24 L. Ed. 565, 572. But now that the capias ad respondum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

The 6th paragraph of the syllabus in that case reads as follows:

"A foreign corporation may be deemed present in a state, so as to make it constitutionally liable to be sued there, when the activities of the corporation in the state have not only been

continuous and systematic but also give rise to the liability sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given."

In the case of *Lulu B. McGee* v. *International Life Insurance Co.*, 355 U. S. 220, 2 L. Ed. 2d 223, the court, as stated in the first paragraph of the syllabus, recognizes that the due process clause of the constitution still limtis the power of state courts to enter binding judgments against persons not served with process within their boundaries. In that case, the court, however, greatly modified the doctrine announced in *Pennoyer* v. *Neff*, and in this connection, the courts say in the opinion, page 225 in Lawyers Edition as follows:

"Since *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565, this court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this court accepted and then abandoned 'consent,' 'doing business,' and 'presence,' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, the Position of Foreign Corporations In American Constitutional Law, Ch V. More recently in *International Shoe Co.* v. *Washington*, 326 U. S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A. L. R. 1057, the court decided that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice. Id. 326 U. S. at 316.'

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other non-residents."

Under the present development of the law, or evolutionary changes in the doctrine of *Pennoyer* v. *Neff*, a state court may take jurisdiction of an action against a non-resident defendant who has had certain minimal contacts with the state which is

expressed in the decisions above referred to, "that the maintenance of a suit does not offend traditional notions of fair play and substantial justice," and that where a state court has jurisdiction, it may provide for such method of serving process upon such non-resident defendant as is reasonably calculated to effectively notify such non-resident defendant of the pendency of such suit and gives him an opportunity to come in and defend.

In *Hanson* v. *Denckla*, 357 U. S. 235, 2 L. Ed. 2d 1283, the court, in the 6th paragraph of the syllabus says as follows:

"The due process clause of the Fourteenth Amendment requires a state court to employ a means of notice reasonably calculated to inform nonresident defendants of pending proceedings against them, and requires also that such nonresidents be given an opportunity to be heard in defense of their interests."

The court again recognizes the doctrine in *Pennoyer* v. *Neff* as still having some life, using the following language:

"22. The trend of expanding personal jurisdiction over nonresidents does not herald the eventual demise of all restrictions on the personal jurisdiction of state courts."

In view of the trend of the modern decisions, particularly of the Supreme Court of the United States, the constitutionality of the Ohio "long-arm" statute is hardly debatable. The fact that the long-arm statute is retroactive in effect would not, under the decision of the *McGee case*, violate the due process clause of the Federal Constitution.

"The California statute became law in 1949, after respondent had entered into the agreement with Franklin to assume Empire Mutual's obligation to him. Respondent contends that application of the statute to this existing contract improperly impairs the obligation of the contract. We believe that contention is devoid of merit. The statute was remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations under the contract. It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against respondent. At the same time respondent was given a reasonable time to appear and defend on the merits after being notified of the suit. Under such circumstances it

had no vested right not to be sued in California." (*McGee* v. *International Life Ins. Co., supra*.)

The court in the *McGee case* was not construing the California statute. The Federal courts have always considered themselves bound by the construction placed upon a state statute by a court of last resort of the state. The court held that the due process clause would not prevent such a statute to have retroactive effect.

The question therefore presented in this case is whether or not the Legislature intended the statute to have retroactive effect.

"It is considered against the policy of the law to give statutes a retroactive effect. Retrospective laws, accordingly, are not favored by the courts, which struggle to construe statutes so as to give them a prospective, rather than a retrospective, operation. Courts indulge in the presumption that the Legislature intended statutes enacted by it to operate prospectively rather than retroactively. Indeed, the firmly established general rule is that they are to be so construed, especially where such a construction will avoid injustice. If it is doubtful whether it was intended that the act should operate retrospectively, the doubt should be resolved against such operation." (50 Ohio Jurisprudence 2d 316, Section 339.)

"Constitutions as well as statutes are construed to operate prospectively only, unless, on the face of the instrument or enactment, the contrary intention is manifest beyond reasonable question." (*Buckeye Churn Co.* v. *Abbott*, 115 Ohio St. 152.)

The statute in question is neither an amending statute nor the repeal of a statute, and in the opinion of the court, Section 1.20, Revised Code, would not control its construction. However, attention is called to the case of *Schlagheck* v. *Winterfeld*, 108 Ohio App. 299. The first paragraph of the sylalbus reads as follows:

"Although Section 1.20, Revised Code, applied only in specific terms to the amendment or repeal of a statute, the principle therein set forth is to be regarded as declaratory of the policy of the law of Ohio which forbids giving to a statute retroactive effect, although remedial in character, unless such statute contains an express provision to that effect."

In 50 American Jurisprudence 495, Section 478, the rule is laid down that in determining legislative intent, ''the courts have evolved a strict rule of construction against a retrospective operation and indulge in the presumption that the Legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only, and not retroactively.''

In Section 482, the following language is used:

''A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past. Hence, remedial statutes, or statutes relating to remedies or modes or procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. To the contrary, statutes or amendments pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention.''

The statute in question does not create or affect vested rights or create a cause of action. It does however, create a profound change in the theory relating to jurisdiction over non-resident defendants. It creates jurisdiction in certain causes of action where none existed before. It provides for venue and a radical departure from previous notions of serving process on non-residents. In a sense, these statutes are partially of substantive character and somewhat of a remedial character. If the statute in question were given retroactive effect and applied to a cause of action already in existence, it would hardly be held not ''to offend traditional notions of fair play and substantial justice.''

Prior to the enactment of the statute, it was a uniform holding that jurisdiction over non-resident defendants for the purpose of personal liability requires service of process personally within the state. Statutes in derogation of the common law or settled rules of law are strictly construed. (50 Ohio Jurisprudence 2d, under Statutes, Section 284 and 287.)

In Section 292 under the discussion of Statutes, 50 Ohio Jur-

isprudence 2d 276, the rule is stated that remedial statutes are entitled to a liberal construction. However, Section 294 contains the following language:

"The rule that remedial statutes are entitled to a liberal construction is not universal in its application. Thus, there is authority to the effect that remedial statutes are.sometimes subjected to a strict construction because of the harshness of the remedy and the fact that it is out of the ordinary course of practice. A statute may provide a remedy so summary in nature that the courts will not, by construction, extend it beyond its plain and obvious terms."

The case of *Cincinnati, Hamilton & Dayton R. R. Co.* v. *Hedges,* 63 Ohio St. 339, is directly in point. There, after a cause of action fully matured and accrued, a change was made by a statute relating to the proof on the part of the plaintiff of his case, and in discussing the question as to whether the new statute had retroactive effect, the court considered that the statute was remedial in character. A portion of the opinion, page 340, reads,

"The injury as stated occurred November 23, 1889, and was therefore an existing cause of action at the adoption of the amendment, though the suit was not commenced until afterwards, on May 21, 1890. Prior to this statute the existence of a defect in the machinery employed resulting in injury to an employe did not make a prima facie case of negligence against the company. Culpable knowledge on the part of the company had to be proved by the plaintiff. Assuming the act of 1890 to be remedial in character, still, under Section 79, Revised Statutes, it would not apply to an existing cause of action without an express provision to that effect; and there is no such special provision in the act.

"It is true that Section 79, Revised Statutes, applies only in terms to the amendment or repeal of a statute, and the act of 1890 above referred to is neither. Still, we regard the principle of that section as declaratory of the policy of our law, which forbids giving to a statute retroactive effect, though remedial in character, unless the act contains an express provision to that effect."

"Act of Ohio Legislature, approved March 3, 1933, permitting service of process upon the secretary of state of Ohio, in civil actions against a non-resident motor vehicle owner for damages arising out of any accident or collision occurring with-

in the state, held not retroactive and hence inapplicable to causes of action arising prior to its effective date." *(Wilson* v. *Silverman,* 31 N. P., N. S. 252, syllabus.) Section 6308-1, General Code, permitting service of process upon the Secretary of State in civil actions against non-resident motorists for damages arising out of any accident or collision occurring within the state, is not retroactive and is not applicable to a cause of action arising prior to its effective date." *(Schaeffer* v. *Alva West & Co.,* 53 Ohio App. 270.)

The following cases support the rule that the statute in question would not have retroactive effect:

(1) *Hasse* v. *American Photograph Corp.,* 299 F. 2d, 666. The first paragraph of the syllabus reads as follows:

"Amendment to Oklahoma long-arm statute allowing service of process upon personal representative of non-resident motorist dying prior to or after commencement of suit was not strictly procedural and could not have retroactive application to permit service upon representative of non-resident motorist who died in collision before its enactment."

(2) *Rozell* v. *Kaye,* 197 F. Supp. 733. The first paragraph of the syllabus reads as follows:

"Texas statute dealing with service of process on foreign corporations and non-residents, in case of nonresidency after accrual of cause of action, by service on Secretary of State, does not apply retroactively to cause of action arising prior to enactment and effective date of statute."

(3) *Summers* v. *Myken,* 184 F. Supp. 745. The 2nd, 4th and 5th paragraphs of the syllabus read as follows:

"2. Under Pennsylvania law, legislative rules as to service of process are in derogation of common law and must be strictly construed."

"4. Substituted service statutes affect substantive rights, and are more than merely procedural or remedial."

"5. Pennsylvania Nonresident Vessel Owners Act, providing for substituted service, was not retroactive, and did not apply to case of injuries which occurred before enactment."
Commencing on page 747, in an appendix to the opinion, the cases of various states bearing on the subject are cited.

While cases may be found, particularly New York cases, holding to the contrary, the great weight of authority of the cas-

es is that a statute similar to the Ohio statute would be interpreted as inapplicable to a cause of action accruing prior to the effective date of the statute.

In the opinion of the court, the statute in question is partially substantive and partially remedial, is in derogation of the common law, and the case law on the subject as theretofore understood. The Legislature having expressed no intention to give the statute retroactive effect, motion to quash the service of summons should be, and is, sustained as to both defendants.

The two defendants, Harold G. Little and A. S. Daniel, at the time the operation was performed, could not have anticipated this legislative action, and it seems to the court that to give this statute retroactive effect would be against all notions of fair play.

The entry:

Motion of the defendant Harold G. Little to quash the service of process on him is sustained, and the same is hereby set aside and held for naught.

Motion of the defendant A. S. Daniel to quash the service of process on him is sustained, and the same is hereby set aside and held for naught.

*Motions sustained.*