684 So.2d 382 (1996)
STATE of Louisiana
v.
Donald Gene COUSAN.
No. 94-KA-2503.
Supreme Court of Louisiana.
November 25, 1996.
*384 Dennis G. Stewart, Rayville, Clive Adrian Stafford Smith, Carol A. Kolinchak, New Orleans, for Applicant.
Richard P. Ieyoub, Attorney General, Terry R. Reeves, District Attorney, Clifford R. Strider, III, for Respondent.
CALOGERO, Chief Justice.[*]
Defendant Donald Gene Cousan was convicted of the first degree murder of Officer Narvin Powell, Sr. and was thereafter sentenced to death. The case is now before this Court on appeal from the district court. La. Const. art. V, § 5(D). For the reasons that follow, we affirm the conviction, but vacate the sentence and remand to the trial court for a new sentencing hearing.

FACTS
On the evening of September 26, 1992, J.W. Kennedy notified the Winnfield Police Department of a possible break-in at his place of business. Officer Powell was dispatched to the scene to investigate, where he was met by Kennedy. Officer Powell and Kennedy first observed that a rear window of the building had been broken. The men then entered the building through the front door and proceeded to the rear office where the broken window was located.
With his gun drawn, Officer Powell discovered the defendant hiding under a desk in the rear office and informed Kennedy that the intruder was still in the building. Kennedy went to the front of the building to call for assistance. After he made the call, Kennedy returned to the rear office to find the *385 defendant lying face down on the floor with Officer Powell leaning over him. Officer Powell was holding the defendant's right hand, which had been handcuffed, and was attempting to cuff the defendant's left hand. Kennedy noted that Officer Powell's gun had been returned to its holster.
Because he was having difficulty cuffing the defendant's left hand while the defendant was in a prone position, Officer Powell ordered the defendant to kneel. Although the defendant did so, Kennedy observed that the defendant held his left arm rigidly at his side, thereby preventing Officer Powell from cuffing his left hand. Officer Powell then ordered the defendant to stand. The defendant again complied with the order, but remained otherwise uncooperative.
At this point, Kennedy became nervous about a possible confrontation and decided to leave the building. As he was exiting the building, Kennedy looked back towards the rear office and witnessed a struggle between Officer Powell and the defendant. Kennedy saw the defendant reach for Officer Powell's gun, while Officer Powell was leaning over the defendant and holding what appeared to be a can of mace. Kennedy did not, however, observe whether the defendant gained control of the gun. Nor did Kennedy observe whether Officer Powell sprayed the defendant with the mace. Rather, Kennedy returned to his vehicle and pointed the headlights toward the building.
Moments later, Kennedy witnessed Officer Powell and the defendant depart the building through the front door, still struggling and grappling in an embrace. The defendant, with a handcuff on his right hand, broke free from Officer Powell's hold and fled the scene. Officer Powell slumped to the ground, having been shot once.
Shortly thereafter, Officers Russell Jones, Stanley Martin, and Alan Marsden arrived. Jones found Officer Powell in a semi-crouched position against the front wall of the building. Officer Powell told Jones, "Partner, I've been shot." When Jones asked whether he knew who had shot him, Officer Powell responded, "No." Officer Powell then asked Jones to take his service revolver and handed the gun to him.
When the ambulance arrived at the scene, Jones gave Officer Powell's gun to Bob Stephens, an ambulance attendant who was also a former police officer, so that Jones could help lift Officer Powell onto the stretcher. After the ambulance left, Jones and the other officers searched unsuccessfully the surrounding area for the suspect. Approximately forty-five minutes later, Jones went to the hospital to retrieve Officer Powell's gun from Stephens. Officer Powell died at the hospital of a single gunshot wound to the lower right side of the chest. The bullet, which had been imbedded in Officer Powell's body, was recovered.
Upon entering the building at the crime scene, investigators discovered signs of a violent struggle in the rear office. Furniture was displaced, and several other objects had been moved or damaged. Investigators also discovered a second bullet in the rear office. Expert testimony, which reconstructed the second bullet's trajectory, established that Officer Powell's gun had been fired before it cleared the holster. The bullet traveled through the holster, then through a door, and became imbedded in the carpet of a room next to the office where the struggle had occurred. No other shots were fired.
The defendant was arrested the following afternoon, some seventeen hours after the shooting, on an initial charge of unlawful entry of a place of business. The defendant was advised of his rights and signed a form indicating the same. Two hours later, defendant gave a recorded statement to police in which he admitted his involvement in the shooting. However, defendant claimed that only a single shot was fired when the gun discharged accidentally during the struggle between Officer Powell and himself.
On December 16, 1992, a grand jury returned a Bill of Indictment that charged defendant with one count of first degree murder. At his January 7, 1993 arraignment, the defendant pled not guilty. One month later, the defendant was tried and convicted by a jury of first degree murder. At the conclusion of the sentencing phase, the jury recommended the death penalty, noting two aggravating circumstances: (1) *386 the offender was engaged in the perpetration or attempted perpetration of an aggravated escape and (2) the victim was a peace officer engaged in the performance of his duties. The trial judge formally sentenced the defendant to death.

LAW AND DISCUSSION
On appeal, defendant alleges numerous errors,[1] which this Court will address, in serial form, as follows: pre-trial motions, voir dire issues, guilt phase, ineffective assistance of counsel, and penalty phase. Because this Court will vacate defendant's sentence for reasons given hereafter, we find it unnecessary to resolve other alleged errors relating to the penalty phase, as they are not likely to recur during the new sentencing hearing.

Pre-Trial Motions

Change of Venue
Defendant, in this Court, contends that the trial court erred by failing to change the venue of the proceedings. However, in the trial court, defense counsel did not seek a change of venue.[2] As this Court recognized in State v. Bolton, where a similar argument regarding venue was made, the defendant "cannot now be heard to complain of an issue that he failed to bring to ... the trial court." 354 So.2d 517, 519 (La.1978); see also State v. Brogdon, 426 So.2d 158, 164-65 (La.1983). Thus, because no motion for change of venue was made in the trial court, the issue has not been preserved for appellate review.

Motion to Suppress Statements
Defendant argues that the trial court erred in denying his Motion to Suppress Statements. In so arguing, defendant alleges that his purported waiver of rights was invalid, given that the police failed to inform him, prior to the questioning, either that Officer Powell had died or that he was a suspect in the death. Rather, the police were ostensibly questioning him only as a suspect for unauthorized entry of a place of business when the defendant made incriminating statements regarding his involvement in the shooting. Thus, defendant avers that the State misled him as to the true nature of the questioning and, thus, failed to establish beyond a reasonable doubt that the purported waiver was free and voluntary.
Under Louisiana Revised Statute 15:451, the prosecutor must establish, prior to its admission into evidence, that a confession "was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." LA.REV.STAT. ANN. § 15:451 (West 1992). Here, the defendant challenges only the voluntary nature of the statement. In determining whether a statement is voluntary, the trial court must consider the totality of the circumstances under which the statement was given. State v. Lewis, 539 So.2d 1199, 1201-02 (La.1989). The trial court's ruling concerning whether the statement was voluntarily given is afforded great weight and "will not be disturbed on appeal unless clearly unsupported by the evidence." State v. Brooks, 541 So.2d 801, 814 (La.1989) (citing State v. Thornton, 351 So.2d 480, 484 (La.1977)).
In the case before us, we note at the outset that the police made no affirmative misrepresentations to the defendant concerning the subject matter of the interrogation. Yet, the failure to inform defendant that he was a suspect in Officer Powell's death is certainly a relevant factor in reviewing the totality of the circumstances under *387 which defendant made the incriminatory remarks. Nonetheless, the statement itself provides ample evidentiary support for the trial court's determination that the statement was made voluntarily:
Q. Donald, have we threatened you in any way?
A. No, sir.
Q. Have we beat you up?
A. No, sir.
Q. I notice you've got a, look's like a ...
A. I got in a fight with (inaudible).
Q. a raspberry or a knot up here on your right cheek bone. Did any deputies do that?
A. No, sir.
Q. Has anybody up here mistreated you at all?
A. No, sir.
Q. Has anybody up here promised you anything?
A. No, sir.
Q. Have we threatened you in any way?
A. No, sir.
Q. Have we laid a hand on you?
A. No, sir.
Q. We've offered you food, I guess, and refreshment and, uh, an opportunity to go to the restroom, wash your hands and gave you some water I think, offered you coffee.
A. Yes, sir.
Q. Uh, no one has done anything to make you give this statement, threatened you or any member of your family, or in any way coerced you or forced you to tell us anything. Is that right?
A. No, sir.
(R. at pp. 203-04). Further, we recognize an additional factor that suggests that the statement was voluntarily given: The statement is essentially exculpatory in that defendant claims that the shooting was accidental. State v. Williams, 383 So.2d 369, 372 (La. 1980).
For these reasons, we conclude that the trial court's ruling as to the voluntary nature of the statement is supported by the evidence. Accordingly, this argument lacks merit.

Motion for Individual Sequestered Voir Dire
Defendant contends that the trial court erred in denying his request for individual voir dire. He argues that the extensive pre-trial publicity regarding the case created "special circumstances" that warranted individual, sequestered voir dire and that the denial of this request impaired his constitutional right to full voir dire examination. LA. CONST. art. I, § 17. Defendant explains that the denial, inter alia, forced his trial counsel to curtail the questioning of individual venirepersons regarding their exposure to pre-trial publicity, as detailed questions and responses would have tainted the remaining venirepersons.
The law neither requires nor prohibits the sequestration of venirepersons for the purpose of conducting individual voir dire. State v. Comeaux, 514 So.2d 84, 88 (La.1987). Such a determination lies within the discretion of the trial court. Generally, a defendant must show "special circumstances" that justify individual voir dire examination. Absent such a showing, the trial court does not err in denying defendant's request. State v. Copeland, 530 So.2d 526, 535 (La. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989); Comeaux, 514 So.2d at 88. Moreover, mere status as a capital case, in and of itself, does not constitute the requisite special circumstances. E.g., State v. Wingo, 457 So.2d 1159, 1165 (La.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2049, 85 L.Ed.2d 322 (1985).
The defendant herein failed to sustain his burden of demonstrating such special circumstances, offering instead only vague and conclusory allegations of harm in his written motion and oral argument. Nevertheless, although the motion was denied, we note that the trial judge expressly stated that he would permit sequestered, individual voir dire on a case-by-case basis, if needed.[3]
*388 Therefore, we conclude that the trial court did not err in denying defendant's motion. The argument lacks merit.

Voir Dire

Method of Selecting Tales Jurors
Defendant argues that the trial court erred in permitting a deputy to select tales jurors from among the bystanders in the courthouse. Defendant avers, inter alia, that this practice of selecting bystander jurors violated his rights to a jury selected at random and to a jury that represents a fair cross-section of the community. LA.CODE CRIM. PROC. ANN. art. 784 (West 1981); LA. SUP.CT. R. 25, § 1. Further, defendant avers, assuming arguendo that the practice of summoning bystander jurors is constitutional, that the trial court erred in allowing a deputy to make the selections in the instant case because (1) there was a great potential for bias, as the victim was a fellow law enforcement officer and (2) other members of the sheriff's department participated in the investigation.
In addressing defendant's argument, it must first be noted that the defendant did not lodge a contemporaneous objection to either the method or manner used to select tales jurors during voir dire. Nonetheless, defendant argues that this Court should not extend the Taylor rule[4] to bar review of unobjected to errors that occur during voir dire, as such errors affect both the guilt and penalty phases. We need not, however, reach that issue in this case. For reasons to be given hereafter, we will vacate the defendant's sentence. Therefore, we can pretermit consideration of other alleged errors that relate to the penalty phase. Accordingly, in this case, the unobjected to error at issue would affect only the guilt phase. As such, the error falls squarely under the Taylor rule and, thus, lacks merit.[5]

Juror Deano Thornton
The defendant argues that the trial court erred in failing to strike juror Deano Thornton for cause based upon his employment as a city marshall, his friendship with the victim, and his status as a mayoral candidate for Winnfield at the time of the trial. Given the combined effect of these three factors, defendant argues that Thornton could not be an impartial juror and, as such, was unqualified to serve on the jury. Yet, Thornton not only served on the jury, but he served in the most influential position on the jury. He became the jury foreman.
However, trial counsel did not challenge Thornton for cause. Thus, the issue has not been preserved for appellate review. LA. CODE CRIM. PROC. ANN. art. 800(A) (West Supp.1996); see also Bolton, 354 So.2d at 519; Brogdon, 426 So.2d at 164-65. This argument lacks merit.[6]

Denial of Cause Challenges
Defendant avers that the trial court erred in denying his cause challenges of venirepersons Robert Jurek and John Johnson. In response to the trial court's denial of the cause challenges, defendant objected, thereby preserving the issue for appeal, and exercised peremptory challenges to exclude Jurek and Johnson from the jury. During the course of the voir dire proceedings, defendant exhausted all twelve of his peremptory challenges.
This Court has recognized that "[w]here an accused has exhausted all of his peremptory challenges before completion of the panel, he is entitled to complain on appeal *389 of a ruling refusing to maintain a challenge for cause made by him." State v. McIntyre, 365 So.2d 1348, 1350 (La.1978). To preserve the issue for appeal, the defendant must also lodge a contemporaneous objection to the trial court's ruling. LA.CODE CRIM. PROC. ANN. art. 800(A) (West Supp. 1996). If defendant thereafter proves that the cause challenge was erroneously denied, prejudice is presumed, and a reversal is mandated. State v. Maxie, 93-2158, p. 15 (La.4/10/95),653 So.2d 526, 534.
The grounds upon which a defendant may lodge a challenge for cause are found within Louisiana Code of Criminal Procedure article 797, which reads in pertinent part:
The ... defendant may challenge a juror for cause on the ground that:
. . . .
The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and evidence;
. . . .
The juror will not accept the law as given to him by the court....
LA.CODE CRIM. PROC. ANN. art. 797(2) (West 1981). Thus, even if a potential juror initially expressed doubt as to the accused's innocence, he can serve as a competent juror if upon further questioning he demonstrates an ability to set aside such doubt and follow the law. State v. David, 425 So.2d 1241, 1246 (La.1983). A trial judge's ruling concerning a challenge for cause is afforded great weight and "will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of discretion." State v. Bourque, 622 So.2d 198, 226 (La.1993).

1. Robert Jurek

Defendant argues that the trial court erred in failing to sustain his challenge for cause of venireperson Robert Jurek because Jurek demonstrated an inability to set aside his preconceived opinions and afford the defendant the presumption of innocence.
In reviewing the transcript of Jurek's voir dire examination, we note that although his initial responses were suggestive of an inability to set aside his preconceived opinions, Jurek's responses during rehabilitation demonstrated his belief that he could render an impartial verdict. Further, given that the trial judge was in the best position to evaluate Jurek's demeanor and credibility regarding his impartiality, we conclude that the trial judge did not abuse his discretion in denying the challenge. This argument lacks merit.

2. John Johnson

Defendant also argues that the trial court erred in denying his cause challenge of venireperson John Johnson because Johnson exhibited an inability to follow the law with respect to the presumption of innocence. Defendant avers that when first questioned, Johnson explained that although he had a preconceived opinion as to the defendant's guilt, he would afford defendant the presumption of innocence. However, defendant contends that later questioning called into doubt Johnson's ability to do so.
After reviewing the voir dire testimony, we conclude that any doubts about Johnson's ability to follow the law with respect to the presumption of innocence arose from Johnson's apparent confusion regarding the relationship between his own opinion and his duty to set it aside, rather than from an unwillingness or inability to afford the defendant the presumption of innocence. This confusion was resolved upon further questioning.
Further, we note that although Johnson admittedly had a preconceived opinion as to the defendant's guilt, he repeatedly stated that he could set aside this opinion and follow the law. We reiterate that the mere fact that a potential juror has a preconceived opinion as to the defendant's guilt does not mandate removal for cause if, as in this case, the potential juror expresses an ability to disregard that opinion and render a verdict according to the law and evidence. LA. CODE CRIM. PROC. ANN. art. 797(2) (West *390 1981); David, 425 So.2d at 1246. Thus, because the overall tenor of Johnson's voir dire responses demonstrate that he could have set aside his preconceived opinion and accepted the law as given, the trial court did not err in denying the challenge. This argument lacks merit.

Guilt Phase
Defendant next argues that the State failed to present sufficient evidence to establish his guilt beyond a reasonable doubt. In particular, defendant contends that the State failed to prove that he had the requisite specific intent to kill or inflict great bodily harm. Instead, defendant maintains that Officer Powell's death resulted from an accidental discharge of the gun during the struggle between Officer Powell and himself. Further, defendant maintains that his version of the shooting is consistent with the circumstantial evidence adduced by the State. As such, defendant avers that the State failed to carry its burden of disproving defendant's hypothesis of innocence, thereby negating a finding of specific intent.
The standard for evaluating a claim of insufficient evidence was set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), wherein the Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319, 99 S.Ct. at 2789; State v. Captville, 448 So.2d 676, 678 (La.1984) (recognizing Louisiana's adoption of the Jackson standard); see also LA.CODE CRIM. PROC. ANN. art. 821 (West Supp.1996). With respect to the instant case, the essential elements of the first degree murder charge are as follows: (1) the killing of a human being, (2) when the offender has specific intent to kill or to inflict great bodily harm, and (3) when the offender is engaged in the perpetration or attempted perpetration of aggravated escape. LA.REV.STAT.ANN. § 14:30(A)(1) (West Supp. 1996). Here, the defendant challenges the sufficiency of the evidence only insofar as it relates to the specific intent element.
Specific intent is defined by statute as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LA.REV.STAT. ANN. § 14:10(1) (West 1986). Such state of mind can be formed in an instant, as recognized by the Third Circuit in State v. Maxey, 527 So.2d 551, 555 (La.App. 3d Cir.1988), writ denied, 541 So.2d 868 (La. 1989). Specific intent "need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of defendant." State v. Graham, 420 So.2d 1126, 1127 (La.1982). Thus, specific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is excluded. LA.REV.STAT. ANN. § 15:438 (West 1992). Nonetheless, "[w]hen a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." Captville, 448 So.2d at 680.
Defendant argues that his version of events is entirely consistent with the evidence adduced by the State. We disagree. In his recorded statement, defendant related that after Officer Powell found him hiding under the desk, he ordered the defendant to get on his hands and knees, whereupon Officer Powell placed a cuff on his right arm. Defendant then recounted the following events:
And I stood up. He told me to get down, or he'll shoot me. Then he sprayed some mace in my face, and I was trying to talk to him. Told me, he pulled his gun and he told me he would shoot me if I didn't get down, and I turned around towards him, and he sprayed some more mace in my face, and I grabbed his handthe one he had the gun in. We went tussling over the gun, trying to. I thought he was fixing to shoot me, and I, I, we started wrestling, kept wrestling in another room, went to another room wrestling.
. . . .

*391 ... He had the gun in his hand, and I was holding his hand, trying to keep him from shooting me.
. . . .
... We kept tussling to the front the other room, office or, kept on. I heard a shot, you know, thought he had shot me, and, uh, I didn't know it had, I didn't know it had shot him. He said something, but I couldn't understand what he was saying, and we kept tussling and we went outside. We was tussling outside. He was telling me to leave, telling me to go. I tell him if I try to run he gonna shoot me. He started telling me to go, and he said he wasn't gonna shoot me.
(R. at p. 209). Defendant also claimed that only a single shot was fired during the struggle.
The State introduced evidence that directly contradicts various portions of defendant's statement. First, physical and forensic evidence clearly established that two shots were fired from Officer Powell's gun at the scene. Second, although defendant claims that Officer Powell twice sprayed him with mace, expert and lay testimony established that mace had not been sprayed in the building. Third, defendant claims that he stood up against Officer Powell's orders, prompting Officer Powell to verbally threaten to shoot him. However, Kennedy testified that he heard Officer Powell, in fact, order the defendant to his feet and that he observed the defendant comply. Finally, although defendant claims that Officer Powell had control of the gun, Kennedy testified that he witnessed, as he was leaving the office, the defendant reach for the gun, which was in Officer Powell's holster. Thus, we conclude that such inconsistencies support a reasonable inference that the jury considered the defendant's exculpatory explanation in light of the evidence and rejected it.
Viewed in the light most favorable to the prosecution, the direct and circumstantial evidence support the following version of events, which was advanced by the State, beginning at the point at which Kennedy witnessed the defendant reach for Officer Powell's gun, while Officer Powell stood above defendant with mace in hand: Defendant, with his right arm cuffed, maneuvered around the desk in the rear office, thereafter facing Officer Powell who remained on the opposite side of the desk and who was still holding the other cuff with his right hand. During defendant's maneuvering, Officer Powell lost his balance, falling toward the desk. At which point, defendant reached across the desk with his free hand to grab Officer Powell's gun from its holster. As the defendant and Officer Powell struggled for control of the gun, it discharged before clearing the holster. Thereafter, defendant gained control of the gun, pushed it into Officer Powell's chest at a seventy-five degree angle, and pulled the trigger, thereby inflicting the fatal near contact wound.
Thus, we conclude that, under the Jackson standard, a rational trier of fact could have found on the evidence presented that defendant was guilty of first degree murder beyond a reasonable doubt. Accordingly, this argument lacks merit.

Ineffective Assistance of Counsel
Defendant argues that he was a victim of his trial counsel's inexperience in trying capital cases and, as such, was denied his constitutional right to effective assistance of counsel. U.S. CONST. amend. VI; LA. CONST. art. I, § 13; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so arguing, defendant contends that trial counsel made numerous prejudicial errors, including, inter alia, the following: failure to file "necessary and proper" motions, failure to attempt to rehabilitate potential jurors that the State successfully challenged for cause, failure to ask potential jurors whether they would automatically vote for the death penalty, failure to challenge certain potential jurors for cause, and failure to object to the State's use of its peremptory challenges to exclude black venirepersons from the jury.
Claims of ineffective assistance of counsel are generally relegated to post-conviction proceedings. E.g., State v. Burkhalter, 428 So.2d 449, 456 (La.1983). However, this Court has, on occasion, addressed such claims on direct review where the record discloses the necessary evidence to decide *392 the issue. State v. Ratcliff, 416 So.2d 528, 530 (La.1982).
The case before this Court is not such a case. As many of defendant's allegations concern trial counsel's failure to take certain actions, the record in the instant case does not contain sufficient evidence for this Court to fully explore defendant's allegations on direct review. Accordingly, we will not herein address defendant's ineffective assistance claim.

Penalty Phase
It is only at the penalty phase that defendant's appeal has merit, as mentioned hereinabove. Specifically, defendant argues that the trial court erred by instructing the jury on the governor's clemency power in accordance with the 1993 version of Louisiana Code of Criminal Procedure article 905.2(B)the "commutation statute"which reads as follows:
Notwithstanding any provision to the contrary, the court shall instruct the jury that under the provisions of the state constitution, the governor is empowered to grant a reprieve, pardon, or commutation of sentence following conviction of a crime, and the governor may, in exercising such authority, commute or modify a sentence of life imprisonment without benefit of parole to a lesser sentence including the possibility of parole, and may commute a sentence of death to a lesser sentence of life imprisonment without benefit of parole. The court shall also instruct the jury that under this authority the governor may allow the release of an offender either by reducing a life imprisonment or death sentence to the time already served by the offender or by granting the offender a pardon. The defense may argue or present evidence to the jury on the frequency and extent of use by the governor of his authority.
1993 La. Acts 436 (codified at LA.CODE CRIM. PROC. ANN. art. 905.2(B)).
In addressing defendant's argument, we note the unique procedural posture of this case as it relates to the commutation statute: At the time of defendant's trial, the Code of Criminal Procedure article quoted above was presumed constitutional. The instruction was given at defendant's trial. Thereafter, defendant was convicted and sentenced to death by lethal injection on February 22, 1994. On July 5, 1994, while defendant's case was pending direct review, this Court declared article 905.2(B) unconstitutional under our state constitution, finding it to be "in direct contravention to defendant's due process right to a fundamentally fair trial and to defendant's right to humane treatment." State v. Jones, 94-0459, p. 1 (La.7/05/94), 639 So.2d 1144, 1146. Shortly before this Court announced its decision in Jones, the Louisiana Legislature, by joint resolution, on June 6, 1995, approved for submission to the people a proposed constitutional amendment that would provide constitutional authority for the enactment of a statute that would require trial courts to inform the jury of the governor's clemency power. 1995 La. Acts 1322. By a vote of the people on November 18, 1995, the constitution was so amended.
Clearly, if defendant's case had come before this Court on direct review prior to the passage of the constitutional amendment, defendant would have received the benefit of this Court's holding in Jones, and that would have required that his sentence be vacated. See State v. Sanders, 523 So.2d 209, 211 (La.1988) (recognizing that "a new rule for the conduct of criminal prosecutions is to be applied to all cases pending on direct review or not yet final"). However, in light of the procedural posture of this case, we now face the question of whether a post-trial constitutional amendment can clothe with constitutionality a statute that was constitutionally infirm when it was enacted and when the commutation instruction was given. In simpler terms, we must decide whether the constitutional amendment had a retroactive cleansing effect upon an instruction that amounted to constitutional error at the time of the trial.
The general rule, in most other states, is that a constitutional provision or amendment has prospective effect only, unless a contrary intention is clearly expressed *393 therein.[7] The jurisprudence in Louisiana in this area is well settled and follows the general rule.[8] Thus, to resolve the question before us, we must examine the language of the constitutional provision itself for a clear expression of intent either to ratify the pre-existing commutation statute or to otherwise suggest retroactive effect. The amended version of Article I, Section 16 of the Louisiana Constitution reads as follows:
§ 16. Right to a Fair Trial
Section 16. Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf. However, nothing in this Section or any other section of this constitution shall prohibit the legislature from enacting a law to require a trial court to instruct a jury in a criminal trial that the governor is empowered to grant a reprieve, pardon, or commutation of sentence following conviction of a crime, that the governor in exercising such authority may commute or modify a sentence of life imprisonment without benefit of parole to a lesser sentence of life imprisonment which includes the possibility of parole, may commute a sentence of death to a lesser sentence of life imprisonment without the benefit of parole, or may allow the release of an offender either by reducing a life imprisonment or death sentence to the time *394 already served by the offender or by granting the offender a pardon.
1995 La. Acts 1322, § 1 (emphasis added). It is evident that the provision itself is devoid of any language to suggest that this newfound constitutional authority was intended to have retroactive effect. Rather, the provision speaks only to the futureauthorizing the enactment of a commutation statute.
The official ballot used in the election to pass the amendment read as follows:
To allow for the enactment of a statute to require a trial court to instruct a criminal jury that the governor has the authority to grant a reprieve, pardon, or commutation of a sentence following conviction of a crime or sentencing. (Amends Article I, Section 16)
Id. § 2 (emphasis added). Again, the express language used on the official ballot is couched exclusively in future terms. In fact, even though the statute at issue, the 1993 version of article 905.2(B), was already on the books, the legislature reenacted the article in identical form in the 1995 Regular Session to "take effect and become operative if and when" the proposed constitutional amendment was adopted. 1995 La. Acts 551. Thus, because the constitutional amendment of Article I, Section 16 contained no express intent to validate the preexisting commutation statute at issue, we hold that it has prospective effect only. Accordingly, in this case, the post-trial constitutional amendment and ensuing statute did not cure the constitutional infirmity of article 905.2(B) that existed at the time the article was enacted and when the instruction was given at trial.
Therefore, in addressing defendant's challenge to the State's use at trial of the commutation statute, we must look at the constitution that was in effect when the statute was enacted. In doing so, we conclude that our decision in State v. Jones, supra, is applicable to the case before us in that it interpreted the commutation statute in light of the constitution as it existed at the time of the statute's enactment and at the time of Cousan's trial.
In Jones, as noted above, this Court declared the 1993 version of the commutation statute to be unconstitutional under two provisions of the state constitution as it then existed. First, the commutation statute was found to violate the due process guarantee of a fundamentally fair trial. LA. CONST. art 1, § 2. As the majority explained:
The possible prejudicial effect of the instruction perniciously undermines the reliability of the capital sentencing hearing and the soundness of the process by which a jury arrives at the recommendation of death. It purposefully injects an irrelevant, arbitrary factor into the sentencing hearing risking speculation and chancing the recommendation of the death from a capital jury lacking confidence in governor's ability to wisely use the clemency power. Injecting this arbitrary factor in to the capital sentencing process undermines the fundamental fairness requisite for the capital hearing, a hearing which requires a greater degree of scrutiny due to the qualitative difference between the death penalty from other statutory punishments.
Jones, 94-0459, at p. 13, 639 So.2d at 1153 (citation omitted). The commutation statute was also found to violate the constitutional right to humane treatment. LA. CONST. art. 1, § 20. Again, the majority reasoned:
LSA-Const. Art. 1, § 20 is a constitutional check on the legislature's latitude to pass capital sentencing guidelines. The clemency power jury instruction creates the impermissible risk that the death penalty will be recommended when the penalty is not the one defendant deserves and when it is disproportionate to the severity of the crime. Because the instruction undercuts the soundness of the capital jury's decision making process and undermines the reliability of any resultant recommendation of death, LSA-C.Cr.P. art. 905.2(B) cannot stand.
Jones, 94-0459, at p. 15, 639 So.2d at 1154-55 (citation omitted).
For the foregoing reasons, we find that the use of the commutation statute at defendant's trial was unconstitutional and amounted to reversible error. Accordingly, we will vacate defendant's sentence and remand to the trial court for a new sentencing *395 hearing. We pretermit other alleged errors relating to the penalty phase.

DECREE
For the foregoing reasons, the conviction of first degree murder is affirmed. The death sentence is vacated and set aside. The case is remanded to the district court for a new sentencing hearing.
CONVICTION AFFIRMED; DEATH SENTENCE VACATED; REMANDED TO THE DISTRICT COURT FOR A NEW SENTENCING HEARING.
MARCUS, J., concurs and assigns reasons.
BLEICH and VICTORY, JJ., concur in affirming the conviction, but dissent from the remand of the sentence and would affirm it.
MARCUS, Justice (concurring).
As stated in my dissenting opinion in State v. Jones, 94-0459 (La.7/5/94), 639 So.2d 1144, 1155, I believe the 1993 version of La.Code Crim. P. art. 905.2(B) was constitutional. However, recognizing that the majority in Jones held otherwise, I concur in the reversal of defendant's sentence.
NOTES
[*] Kimball, J., not on panel. Rule IV, pt. 2, § 3.
[1] Defendant alleges forty-two errors that were assigned by trial counsel, of which twelve were argued, and further alleges eight argued errors that were assigned by appellate counsel. Many of these alleged errors are beyond the scope of this Court's review and will not be addressed, as they relate solely to the guilt phase and were not accompanied by a contemporaneous objection. State v. Taylor, 93-2201, p. 7 (La.2/28/96), 669 So.2d 364, 369. The remaining unargued, nonmeritorious assignments of error, which are not otherwise barred by Taylor, will be reviewed in accordance with this Court's decision in State v. Bay, 529 So.2d 845, 851 (La.1988), in an unpublished appendix, as these assignments of error involve only settled principles of law.
[2] During a pre-trial hearing, defendant's trial counsel stated, "I am just saying that in a case of this magnitude ... other motions would certainly seem to be appropriate ..., possibly a motion for a change of venue...." (R. at p. 480). Yet, no such motion followed.
[3] In fact, pursuant to a request made by the State, individual, sequestered voir dire was conducted at one point in the proceedings. (R. at pp. 727-39).
[4] In Taylor, this Court held that "the scope of review in capital cases will be limited to alleged errors occurring during the guilt phase that are contemporaneously objected to, and alleged errors occurring during the sentencing phase, whether objected to or not." Taylor, 93-2201, at p.7, 669 So.2d at 369.
[5] Defendant also argues that the trial court erred in permitting the State to use its peremptory challenges to exclude all black venirepersons from the jury. However, trial counsel failed to make a contemporaneous Batson challenge. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Thus, this argument also lacks merit for the reasons given above.
[6] Defendant also argues that the trial court erred in failing to strike venireperson Billy Dickinson for cause because of his inability to afford the defendant the presumption of innocence. However, trial counsel failed to challenge Dickinson for cause; rather, trial counsel exercised a peremptory challenge to exclude Dickinson from the jury. The issue has thus not been preserved for appellate review.
[7] See Bonds v. State Dep't of Revenue, 254 Ala. 553, 49 So.2d 280 (1950); Matthews v. Quinton, 362 P.2d 932 (Alaska 1961), cert. denied, 368 U.S. 517, 82 S.Ct. 530, 7 L.Ed.2d 522 (1962); City of Prescott ex rel. Lodge v. O'Sullivan, 46 Ariz. 551, 53 P.2d 69 (1935); Drennen v. Bennett, 230 Ark. 330, 322 S.W.2d 585 (1959); Santa Barbara County Taxpayers Ass'n v. Santa Barbara County, 194 Cal.App.3d 674, 239 Cal.Rptr. 769 (1987); People v. Elliott, 186 Colo. 65, 525 P.2d 457 (1974); State v. Lavazzoli, 434 So.2d 321 (Fla. 1983); People ex rel. Kutner v. Cullerton, 58 Ill.2d 266, 319 N.E.2d 55 (1974); Pommerehn v. Sauley, 233 Ind. 140, 117 N.E.2d 556 (1954); Kadan v. Board of Supervisors, 273 Md. 406, 329 A.2d 702 (1974); People v. Gornbein, 407 Mich. 330, 285 N.W.2d 41 (1979); State v. Houndersheldt, 151 Minn. 167, 186 N.W. 234 (1922); State ex rel. Moore v. Molpus, 578 So.2d 624 (Miss.1991); State ex rel. Hall v. Vaughn, 483 S.W.2d 396 (Mo.1972); Torvinen v. Rollins, 93 Nev. 92, 560 P.2d 915 (1977); Goff v. Hunt, 6 N.J. 600, 80 A.2d 104 (1951); Fellows v. Shultz, 81 N.M. 496, 469 P.2d 141 (1970); Ayman v. Teachers' Retirement Bd., 9 N.Y.2d 119, 211 N.Y.S.2d 198, 172 N.E.2d 571 (1961); State ex rel. Stutsman v. Light, 68 N.D. 513, 281 N.W. 777 (1938); Bruney v. Little, 8 Ohio Misc. 393, 222 N.E.2d 446 (Com. P1.1966); Darling v. Miles, 57 Or. 593, 112 P. 1084 (1911); In re Borough of Macungie, Lehigh County, 213 Pa.Super. 313, 248 A.2d 58 (1968); Neel v. Shealy, 261 S.C. 266, 199 S.E.2d 542 (1973); Kneip v. Herseth, 87 S.D. 642, 214 N.W.2d 93 (1974); State v. Wacek, 703 P.2d 296 (Utah 1985); State ex rel. Maloney v. McCartney, 159 W.Va. 513, 223 S.E.2d 607 (1976); Kayden Indus. v. Murphy, 34 Wis.2d 718, 150 N.W.2d 447(1967).

Even more pertinent to the case before us, several states have addressed, and answered in the negative, the narrower question of whether a statute that was forbidden by the constitution at the time of its passage is validated by a subsequent constitutional amendment that authorizes the legislature to enact such a statute. In re R.A.S., 249 Ga. 236, 290 S.E.2d 34 (1982); State v. Bates, 305 N.W.2d 426 (Iowa 1981); Bucher v. Powell County, 180 Mont. 145, 589 P.2d 660 (1979); State ex rel. Rogers v. Swanson, 192 Neb. 125, 219 N.W.2d 726 (1974).
[8] See State v. Coleman, 322 So.2d 195, 197 (La. 1975) (New constitution, which became effective on January 1, 1975, was not applicable in determining the appellate court's role in reversing a ruling that refused defendants' motion for directed verdict because both the operative facts and the trial of the case occurred in 1973.); Plebst v. Barnwell Drilling Co., 243 La. 874, 148 So.2d 584, 588 (1963) ("Generally, the law seems to be well established that an unconstitutional statute is not validated by a subsequent constitutional amendment which does not ratify and confirm the statute but merely authorizes the enactment of such a statute."); State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683, 686 (1941) ("A constitutional provision should be construed as having a prospective effect only unless it exhibits the intention of its framers to be given a retrospective effect."); Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 So. 867, 872 (1912) ("`[U]nconstitutional legislation is not validated by the subsequent adoption of constitutional amendments or other provisions merely authorizing the enactment of such legislation and without expressing any intent to validate it.'" (quoting 8 Cyc. p. 768)); Town of Homer v. Blackburn, 27 La.Ann. *544, *544 (1875) ("The constitutionality of a law must be tested by the constitution which was in force when the law was passed.").